**COIN AMUSEMENT CO., INC., Plaintiff**

**v.**

**R. C. SPENCELEY, INC., Defendant**

# Civil No. 614/1977

# Territorial Court of the Virgin Islands

### Div. of St. Thomas and St. John

# April 14, 1978

562

HAROLD MONOSON, ESQ., St. Thomas, V.I., *for plaintiff*

CLARICE BRYANT, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION

The above captioned case came on for trial on January 23, 1978, at which time findings of fact were rendered from the bench. Final disposition was held in abeyance, however, to give both parties an opportunity to brief what duty is owed by a landlord to the owner of personal property that is left on the premises by a tenant who is evicted. Both sides having filed memoranda of law, the matter is ripe for adjudication.

The facts are briefly recapitulated. The plaintiff corporation is the owner and lessor of various coin operated machines. It leased a Model 222 National cigarette machine to one Edgar Richardson, who operated the now-defunct Peace and Love Discotheque at 78–79 Kronprindsens Gade, Kronprindsens Quarter, St. Thomas, V.I. By the terms of the lease agreement the plaintiff, Coin Amusement, Inc., was to service the machine and Richardson was to get a 20 percent commission of the proceeds. It is undisputed that the defendant, R. C. Spenceley (hereinafter Spenceley), was Richardson's landlord, but was unaware of the agreement between Richardson and Coin Amusement.

On February 23, 1977, Spenceley obtained a judgment against Richardson for $4,800 and restitution of the premises. Richardson was given until March 15, 1977, to vacate. At the trial of the instant case it was not made clear when, in fact, Richardson vacated or was evicted. Timothy Stull, one of plaintiff's witnesses and a former Coin Amusement employee, testified that he serviced the machine on April 14, 1977, and that Richardson was still in possession of the premises. On May 24, 1977, Mr. Stull made another trip to

the Peace and Love Discotheque and learned that Richardson had been evicted. The machine was gone at that time.

Subsequent inquiries by Mr. Stull revealed that Spenceley had evicted Richardson and disposed of all possessions Richardson left on the property. Unfortunately, Spenceley also disposed of the plaintiff's cigarette machine. The uncontradicted testimony was that the machine was given to refuse collectors and taken to a dump. Plaintiff's agents made reasonable and diligent efforts to locate the machine but were unsuccessful. Plaintiff then instituted this action for conversion.

■ The narrow question is whether the defendant-landlord owed a legal duty to the owner of the cigarette machine to store or keep it. In the absence of privity between the landlord and the owner of the machine, and in view of the defendant's lack of actual or constructive knowledge as to the ownership of the machine,[1] it is clear that the defendant's duty to the plaintiff was no greater than it was to Richardson. See generally Restatement (Second) of Torts § 183 Comment g.

Pursuant to the Restatement (Second) of Property and the Restatement (Second) of Torts, made applicable to this jurisdiction by 1 V.I.C. § 4, it is clear that a former tenant has a limited and qualified right to enter onto the land of the owner to remove his chattels still situated thereon. See, e.g., § 178 of the Restatement (Second) of Torts. In fact, § 12.2(3) of the Restatement (Second) of

---

■ [1] The machine had a label affixed to its side, which stated:

For Service
call
Coin Amusement Co.
774–3149

There is no evidence that any of Spenceley's agents or employees ever saw the label. Moreover, even if seen, the court cannot conclude that this label put Spenceley on notice of the plaintiff's ownership rights to the machine as opposed to a duty to service it.

Property imposes a duty on the out-going tenant to restore the premises to its former condition by removing his personal property. Restoration of the premises must be effected within a reasonable time of termination of the lease if termination is neither forseeable nor due to the tenant's default; otherwise, it is at the time the lease terminates. § 12.3(1) and (2);[2] accord § 178 of the Restatement (Second) of Torts. Failure of the tenant to remove his chattels or effects from the premises within the appropriate time constitutes a continuing trespass on the property of the landlord, Restatement (Second) of Torts § 160, and is answerable in damages or by way of a mandatory injunction. See Restatement (Second) of Property § 12.2, Comment p. Alternatively, the landlord may remove the chattels. If he does this before the tenant's actual departure from the premises, he must exercise due care in removing the tenant's property and must secure it from harm. See Restatement (Second) of Property § 14.3, Comment e.

■ If, however, the tenant already has vacated, and chattels still remain on the premises, then other considerations predominate. Crucial among these is whether the tenant has abandoned the property. This necessarily is a factual question, and one not free from difficulty. Its answer may often depend on motivation inferred from conduct or character. If, however, the landlord makes a good faith determination that, in fact, the property has been abandoned, then he is free to dispose of it as he pleases, without fear of retribution from the tenant. See Restate-

---

[2] While §§ 12.2 and 12.3 place particular emphasis on the removal of annexations, such as trade fixtures or crops, it is clear that these sections are not applicable exclusively to such annexations, but include chattels as well. See Comment l to § 12.3, reproduced in pertinent part in footnote 3, infra.

ment (Second) of Property § 12.3 Comment *l*.[3] The tenant is, in addition, liable for all expenses incurred in the removal of his property. This is because the tenant may not, after termination of the lease, interfere with the landlord's right to exclusive use and possession of the premises. Id.

█ Applying these principles to the facts of the case at bar, several conclusions are appropriate. Foremost among these is that Richardson brought the judgment of restitution upon himself by his failure to pay rent. It was, therefore, his obligation to remove all of his personal property from the premises by March 15. After that date he had no right to enter upon the premises to remove his chattels. Restatement (Second) of Property § 12.3(2).

The defendant, however, was obligated to use due care with respect to Richardson's possessions, unless he reasonably believed that the latter had abandoned them. Whether he abandoned them or not is a factual question. Although Richardson had no right after March 15 to enter upon the premises to retrieve his chattels, this alone did not constitute an abandonment or give the landlord license to dispose of them. The testimony made it clear, however, that the cigarette machine was on the premises at least as late as April 14, 1977, or one month after the date set by the court decree for the tenant's eviction. Under these circumstances it was eminently reasonable for the landlord

---

[3] Comment *l* in pertinent part provides:

1. *Tenant's chattels not removed from leased property prior to termination of lease.* Chattels owned by the tenant that are left on the leased property when the tenant leaves may interfere with the landlord's full use of the leased property. He can recover from the tenant the cost of removing such chattels and storing them at some other location, and for any other damages he sustains. The tenant, however, does not lose his ownership of his chattels unless his conduct amounts to an abandonment of them. If the chattels have been abandoned by the tenant, the landlord is entitled to dispose of them as he pleases. The tenant is liable, even though he has abandoned the chattels, for any net cost to the landlord in disposing of them, and for any other damages caused by the abandonment.

to have concluded that the tenant had in fact abandoned his property without intent to reclaim it.[4] His decision to dispose of the machine was thus privileged,[5] and plaintiff had no greater rights than Richardson had vis-a-vis the landlord.

The remaining issue concerns defendant's counterclaim. In its answer to the complaint, Spenceley counterclaimed for $1,400 for storage charges for the machine for the months of April and May of 1977. In its brief defendant merely requests $75 to reimburse it for the expenditures made in having the machine moved to a dump. In either case, the court will deny defendant's counterclaim on the grounds that the plaintiff was without actual notice of his duty to remove the machine from the premises. The court does not believe that it would be equitable to charge the

---

[4] It might be argued that because Richardson remained on the premises at least until April 14, 1977, that the landlord could not fairly have inferred that he abandoned his chattels, and further, that Spenceley consented to Richardson's continued occupancy. Cf. Comment k to § 12.3 of the Restatement (Second) of Property. It is clear, however, with the benefit of hindsight and in the absence of any evidence to the contrary, that Spenceley did not, in fact, consent to Richardson's continued occupancy of the premises beyond the March 15th eviction date. In all probability, Spenceley was merely tardy in enforcing the court's order. That tardiness should not work a windfall for either Richardson or Coin Amusement. Upon the tenant's final removal from the premises sometime in late April or early May the court believes that the landlord was immediately entitled to infer that the tenant had abandoned his chattels. At that point the chattels had been on the premises unlawfully for more than a month. Prior to the tenant's actual departure it could not fairly be said that he had abandoned his property. However, after he already had departed, the landlord was privileged to utilize the originally anticipated date of departure to make the factual determination that the tenant had in fact abandoned his property. Thus Spenceley was entitled to use the March 15, 1977, date of the court-ordered departure for the purpose of ascertaining whether or not Richardson had abandoned his property. This in no way works a hardship on the tenant since that is the date that would have been used had the tenant complied with the court's order. To allow a later date for the purpose of inferring a tenant's intent would reward recalcitrance, encourage disobedience to lawful orders, and encourage detainer.

[5] The plaintiff cites § 222A of the Restatement (Second) of Torts in support of its position that the defendant is liable for conversion. While the language of that section appears to be facially applicable to the case at bar, in particular Illustrations 5 through 8 following Comment d, § 222A does not purport to deal with the issue of a tenant's abandonment of the chattels, and is therefore not controlling here.

plaintiff for this expense in the absence of actual notice. Defendant's claim for damages, no less than plaintiff's, lies against Spenceley's former tenant, Richardson.